*Hitch, Denmark & Lovett,* for plaintiff in error.
*Ernest J. Haar,* contra.

24315. McLEAN v. McLEAN *et al.,* executors.

DECIDED SEPTEMBER 20, 1935.

752

*V. E. Adams,* for plaintiff.

*Mitchell & Mitchell,* for defendants.

STEPHENS, J. Mrs. M. B. McLean, in June, 1933, filed an application for a year's support out of the estate of her husband, Bruce McLean. A caveat to the return was interposed by the executors. There was an appeal by the caveators to the superior court from the judgment of the ordinary setting apart a year's support, and on the trial of this appeal a verdict was directed for the caveators. Mrs. McLean's motion for new trial was overruled, and she excepted. It was alleged in the caveat that there had been a contract between Mrs. McLean and the executors, by which for a consideration she had waived her claim for a year's support and had accepted a settlement in lieu thereof, and that in accordance with this contract the estate had been administered and claims against the estate inferior in rank to a year's support had been paid. Mrs. McLean filed a traverse to the caveat, in which practically all of the material allegations of the caveat were denied. In the traverse she attacked the contract (which she admitted she had signed) on the ground of fraud and on other grounds.

If the contract was binding on Mrs. McLean, it barred any claim on her part for a year's support. It was not binding unless it was free from fraud and was made by her with knowledge of her rights or of the condition of the estate. See *Giles* v. *Giles,* 135 *Ga.* 683 (70 S. E. 335) ; *Hobbs* v. *Hobbs,* 35 *Ga. App.* 645 (134 S. E. 194).

The following appeared from the evidence: Mrs. McLean testified that she signed the contract in the presence of the executors and their attorney in the latter's office. After referring to some remarks by the attorney, she testified: "He said they will lose the estate if something is not done to settle it up and get out of court or something. [He] said suppose you take this, and we will settle this estate right away. I said 'All right, I'm absolutely out of money and would like to have it done right away.' I was so shocked at Mr. McLean's death, and so I signed that, thinking the property would be lost and I would not get a year's support anyway. I signed this agreement here because they told me that if I did not, the mortgage would be foreclosed and the *entire property would be gone* and I would not get a dime. They told me that, and

that's the reason I signed it. Yes, they told me if I didn't do it the real estate would be lost and the debts would take the insurance." The mortgage foreclosure to which she referred was based on a claim against the decedent's interest in some Atlanta property which was one of the chief assets of the estate. The claim was for $597.80, and the executors had on hand sufficient insurance money to pay this claim as well as the funeral expenses and all other debts left by decedent other than the year's support. The estate had on hand $1100 in cash. The contract in the record bears no date, but the evidence shows that it must have been signed within less than a month after decedent's death. In pursuance of the contract a check for $75 went to Mrs. McLean on March 7, 1933. Mr. McLean had died on February 11, 1933. He had been ill for four years prior to death, very ill for two and one half years. Mrs. McLean testified that she had been in bed about half the time since her husband's death, and that she "broke down completely," and then got better and got sick again. She named the physician who treated her. It seems, therefore, that there was no danger of loss of the Atlanta property whether Mrs. McLean signed the contract waiving her year's support or not, unless her year's support absorbed the insurance money. A year's support ranks first among the claims against an estate. Code of 1933, § 113-1508 (Code of 1910, § 4000). It stands ahead of funeral expenses and all other general debts. The McLean estate, it appears, was solvent, with at least $1100 cash on hand. Therefore the statement that unless Mrs. McLean signed the contract she would not get a dime could not have been correct. It was also incorrect to say that if she did not sign the contract the real estate would be lost and the debts would take the insurance, unless by "debts" was meant to include the year's support. This is hardly probable.

Executors are presumed to have knowledge of the condition of the estate. It is their duty to have such knowledge. It was no defense to the year's support proceeding that claims against the estate inferior in rank to a year's support had been paid. The evidence shows that these claims were paid within two or three months after decedent's death. There was no obligation on the executors to pay them until the close of the administration year. Code of 1933, § 113-1507 (Code of 1910, § 3999). If they were paid earlier, it was at the risk of the executors in so far as any

other claims of superior rank which might be later presented were concerned. The evidence, while conflicting, was sufficient to authorize a verdict for Mrs. McLean, the claimant of the year's support. The court erred in directing a verdict against Mrs. McLean, and in overruling her motion for new trial.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*